IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SILVER LINING ENTERPRISES, LLC, )<br>)<br>       Plaintiff, )<br>)<br>v. )<br>)<br>WORLDWISE FASHION )<br>CONSULTING, LLC, a Connecticut )<br>limited liability company; NEW GEN )<br>ENTERPRISES, LLC, a New Jersey )<br>limited liability company; and )<br>ERIC MATRULLO, an individual, )<br>)<br>       Defendants. ) | Case No. CIV-21-00112-JD |

**ORDER**

Before the Court is the Motion to Dismiss ("Motion") [Doc. No. 12] filed by Worldwise Fashion Consulting, LLC ("Worldwise"), New Gen Enterprises, LLC ("New Gen"), and Eric Matrullo ("Matrullo") (collectively, "Defendants"). The Motion seeks dismissal of Silver Lining Enterprises, LLC's ("SLE") Amended Complaint [Doc. No. 10] under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. SLE filed a response opposing the Motion ("Response") [Doc. No. 17], and Defendants filed a reply ("Reply") [Doc. No. 18]. Upon careful consideration, and for the reasons stated below, the Court grants the Motion.

**I.     BACKGROUND**

SLE is an Oklahoma limited liability company with its principal place of business in Oklahoma. The sole member of SLE is Cindy Keathly ("Keathly"), a citizen of Oklahoma. SLE buys luxury products, verifies their authenticity, then sells them to third-

party vendors such as Costco. To facilitate the sale of its products to third-party buyers, SLE provides certain assurances regarding the products' authenticity, such as an open "invoice trail" that allows third-party buyers to trace the origins of the products.

Worldwise is a Connecticut limited liability company with its principal place of business in Connecticut. Matrullo is the sole member. New Gen is a New Jersey limited liability company with its principal place of business in New Jersey. It has three members: Matrullo, Nicole Dragona ("Dragona"), and Gina Johnson ("Johnson"). Matrullo, Dragona, and Johnson are citizens of Connecticut, New Jersey, and Illinois, respectively.

In early 2020, Worldwise, via Matrullo, reached out to SLE about doing business together. SLE responded by sending Matrullo a "wish list" of brands it was interested in selling to its vendors. Matrullo replied regarding the availability of Gucci products. Around this time, SLE entered a Non-Circumvention, Non-Disclosure & Working Agreement ("NDA") with Worldwise. Although not entirely clear, it appears New Gen was formed in May 2020 for the purpose of facilitating this transaction. *See* Am. Compl. ¶¶ 11–12; Keathly Aff. ¶ 7.

SLE began negotiating with Matrullo[1] regarding the purchase of various Gucci products including belts, shoulder bags, and top handle bags. Matrullo told SLE that he

---

[1] Keathly's affidavit is not entirely clear which LLC Matrullo was acting on behalf of whenever he contacted her. Although both parties seem to agree that New Gen was the primary facilitator of the Gucci products sale as evidenced by Dragona's and Keathly's numerous text messages and the actual contracts, it also looks like Matrullo emailed Keathly about the Gucci products from his Worldwise email address.

was looking forward to "working on exciting business opportunities." Keathly Aff. ¶ 10. Dragona contacted SLE about the possibility of sending it samples of the Gucci products. SLE was sent a package of sample scarves. Matrullo also coordinated the delivery of additional Gucci samples. On all documentation that included SLE's address, it showed that SLE was located in Edmond, Oklahoma. Accordingly, all samples sent to SLE were sent to this Oklahoma address.

The parties primarily communicated by email. However, they also used a conference call line and text messaging. Dragona and Keathly texted about the details of the transaction. The texts focused on how the parties could work together, specifics of the Gucci deal, other possible products and deals, and the authenticity of the Gucci products. Via numerous emails, Matrullo and SLE discussed the shipment and cost of the Gucci products.

When the parties finally agreed on terms, Matrullo, acting on behalf of New Gen, forwarded SLE an open invoice trail for the Gucci products. SLE e-mailed Matrullo regarding concerns with the open invoice trail, specifically the purported invoice from Gucci. New Gen sent SLE an allegedly corrected invoice trail.

In September, SLE sent two purchase orders to New Gen to officially buy the Gucci products. SLE wired New Gen $239,265.30 as a deposit. SLE's deposit contract and purchase orders were with New Gen. Under the terms of the purchase orders, the goods were to be delivered "FOB Amsterdam." SLE was to take delivery of the product in the Netherlands and then ship it to SLE's third-party buyer in South Korea and the state of Washington. No part of either contract was to be performed in Oklahoma.

Costco rejected the goods, telling SLE that the paper trail provided by New Gen was not acceptable. SLE, claiming New Gen violated the terms and conditions of their agreement, requested a refund. New Gen refused.

This action by SLE followed.

## II.   LEGAL STANDARDS

### A.   Standard for 12(b)(2) Motion

"[W]hen the court's jurisdiction is contested, the plaintiff has the burden of proving jurisdiction exists." *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995). In the absence of an evidentiary hearing,[2] "the plaintiff need only make a prima facie showing of personal jurisdiction." *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998). "The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." *Id.* "The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits." *Wenz*, 55 F.3d at 1505 (quotation marks and citation omitted). "However, only the well pled facts of plaintiff's complaint, as distinguished from mere conclusory allegations, must be accepted as true." *Id.* "If the parties present conflicting affidavits, all factual disputes must be resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party." *Id.* (quotation

---

[2] "District courts have discretion to hold or deny an evidentiary hearing to determine personal jurisdiction." *Fireman's Fund Ins. Co. v. Thyssen Mining Constr. of Can., Ltd.*, 703 F.3d 488, 494 (10th Cir. 2012). Here, neither party has requested an evidentiary hearing on this issue, so the Court sees no reason to hold one.

4

marks and citation omitted). "In order to defeat a plaintiff's prima facie showing of jurisdiction, a defendant must present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'" *OMI Holdings*, 149 F.3d at 1091 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

## B.   Principles of Personal Jurisdiction

"The law of the forum state and constitutional due process limitations govern personal jurisdiction in federal court." *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017). Oklahoma's long-arm statute provides that Oklahoma courts may "exercise jurisdiction on any basis consistent with the Constitution of this state and the Constitution of the United States." Okla. Stat. tit. 12 § 2004(F). The Oklahoma Supreme Court has interpreted this statute as conferring jurisdiction to the limits permitted by the United States Constitution. *Montgomery v. Airbus Helicopters, Inc.*, 414 P.3d 824, 829 (Okla. 2018). Thus, "the only relevant inquiry" is "whether the United States Constitution places any limits on Oklahoma's ability to exercise jurisdiction." *Newsome v. Gallacher*, 722 F.3d 1257, 1264 (10th Cir. 2013).

Due process requires that the defendant "purposefully established minimum contacts within the forum State" and that the "assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Burger King*, 471 U.S. at 476 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945)). "Depending on their relationship to the plaintiff's cause of action, an out-of-state defendant's contacts with the forum state may give rise to either general (all-purpose) jurisdiction or specific

(case-linked) jurisdiction." *Old Republic*, 877 F.3d at 903; *see also Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. ----, 141 S. Ct. 1017, 1024 (2021).

Specific jurisdiction, which is relevant here, "covers defendants less intimately connected with a State, but only as to a narrower class of claims." *Ford*, 141 S. Ct. at 1024. For specific jurisdiction to attach, "the defendant must have purposefully directed its activities at residents of the forum state," *Old Republic*, 877 F.3d at 904 (quotation marks and citation omitted), and the plaintiff's claims "must arise out of or relate to the defendant's contacts with the forum," *Ford*, 141 S. Ct. at 1025 (quotation marks and citation omitted). The principles concerning specific jurisdiction "derive from and reflect two sets of values—treating defendants fairly and protecting interstate federalism." *Ford*, 141 S. Ct. at 1025 (quotation marks and citation omitted).

### III. ANALYSIS

Defendants argue that they do not have sufficient minimum contacts with Oklahoma for the Court to exercise personal jurisdiction over them. Alternatively, Defendants contend that exercising personal jurisdiction over them would offend traditional notions of fair play and substantial justice.

#### A. SLE has not pled sufficient facts showing that Defendants are alter egos of one another.

SLE asserts that Worldwise, New Gen, and Matrullo are alter egos of each other. Am. Compl. ¶ 32. SLE alleges that "Matrullo exercised total dominion and control over New Gen and Worldwise. Upon information and belief, the personal and financial affairs

6

of Matrullo, New Gen and Worldwise are so intermingled . . . that New Gen was, and is, the alter ego of Matrullo, Johnson and Dragona." *Id.* ¶ 33.

SLE offers no facts to support these assertions. Although SLE alleges that the LLCs' and members' personal and financial affairs are "intermingled," this type of conclusory allegation is not sufficient to survive a motion to dismiss. *See Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995) (explaining that "only the well pled facts of plaintiff's complaint, as distinguished from mere conclusory allegations, must be accepted as true"); *see also Gould v. Wyse*, No. 22-2075, 2023 WL 4994511, at *2 (10th Cir. Aug. 4, 2023) ("[W]e ignore conclusory allegations . . . .").

Nor has SLE expounded on or briefed this issue in any way.[3] Without laying out the necessary elements under the applicable state law,[4] SLE cannot successfully show that New Gen and Worldwise are the alter egos of Matrullo, Johnson, and Dragona and

---

[3] Alternatively, the Court determines that SLE has abandoned or waived its alter ego or piercing the veil arguments. *See United States v. Egli*, 13 F.4th 1139, 1144 (10th Cir. 2021) (stating that abandonment is a form of waiver that "'occurs when a party deliberately considers an issue and makes an intentional decision to forgo it'" (quoting *United States v. Malone*, 937 F.3d 1325, 1327 (10th Cir. 2019))). Defendants' Motion argued that SLE's alter ego claims were "bald allegations." Motion at 13. SLE did not respond to this statement in any way or argue alter ego or piercing the corporate veil. *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 841 (10th Cir. 2005) ("[I]ssues will be deemed waived if they are not adequately briefed." (quotation marks and citation omitted)).

[4] Given the nature of the alter ego doctrine, the Court would need to conduct a choice of law analysis to determine which states' law would apply. SLE does not address this issue, or piercing the corporate veil, for the Court.

vice versa.[5] So, the Court will not use the alter ego doctrine or piercing the corporate veil to find personal jurisdiction over Matrullo as an individual LLC member.[6] Similarly, the Court will also not find personal jurisdiction over one defendant based on another defendant. *Cf. Newsome v. Gallacher*, 722 F.3d 1257, 1266 (10th Cir. 2013) (noting that "personal jurisdiction requirements 'must be met as to each defendant'" (quoting *Rush v. Savchuk*, 444 U.S. 320, 332 (1980)).

### B. The Court does not have personal jurisdiction over Worldwise.

"It is well-established that phone calls and letters are not necessarily sufficient in themselves to establish minimum contacts." *Far W. Cap., Inc. v. Towne*, 46 F.3d 1071, 1077 (10th Cir. 1995). "However, the exercise of jurisdiction *depends on the nature of those contacts*." *Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1418 (10th Cir. 1988) (emphasis in original on nature; emphasis added elsewhere). "The proper focus for

---

[5] Despite SLE's caption in its Response to Defendants' Motion, neither Johnson nor Dragona are parties in this case. If SLE wanted to add Johnson and Dragona as defendants, it should have added them to the caption of the amended complaint or requested leave to amend its pleadings. *See* Fed. R. Civ. P. 10 ("The title of the complaint must name all the parties . . . ."); Fed. R. Civ. P. 15(a)(2) (other than amendments as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave"). A party must file a motion to request action by the Court; it can't bring a motion in a response brief. *See* Fed. R. Civ. P. 7(b)(1); LCvR7.1(c) ("A response to a motion may not also include a motion . . . made by the responding party.").

[6] The Court does not analyze whether it has personal jurisdiction over Matrullo in his individual capacity because SLE has not alleged that any of its interactions with Matrullo were in his personal capacity instead of as a representative for either Worldwise or New Gen. *See, e.g.*, Am. Compl. ¶¶ 4, 9, 32–33. Thus, absent piercing the corporate veil or imposing alter ego liability—which SLE does not argue in the briefing—the Court sees no way it could exercise personal jurisdiction over Matrullo, nor has SLE identified any.

analyzing these contacts is whether they represent an effort by the defendant to 'purposefully avail[ ] itself of the privilege of conducting activities within the forum State.'" *Id.* at 1419 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

Here, Worldwise solicited SLE's business and entered into an NDA with SLE. Apparently, after Worldwise signed the NDA, New Gen took over the majority of responsibilities surrounding the transaction such as working out logistics and communicating with SLE. However, it does appear that Matrullo emailed SLE using his Worldwise email address and said he was looking forward to "working on exciting business opportunities." But, even with these communications, it does not show that SLE and Worldwise envisioned a *continuing* relationship or that there were any "long-term or continuing obligations involving Oklahoma." *Dental Dynamics, LLC v. Jolly Dental Grp., LLC*, 946 F.3d 1223, 1230 (10th Cir. 2020). Instead, the communications between Worldwise and SLE appear to be mere precursors to the relationship between SLE and New Gen.

Nonetheless, it is important to note that Worldwise was seemingly the entity that initially solicited SLE's business. "[S]olicitation is some evidence suggesting purposeful availment . . . ." *Far W. Cap.*, 46 F.3d at 1076. However, solicitation alone is not dispositive. *See id.* ("[Plaintiff] next argues that [Defendant's] offer to explore other relationships with [Plaintiff] during the first phase of negotiations is itself sufficient to establish minimum contacts . . . . However, this solicitation was so remote that it is of little value to [Plaintiff] in its quest for personal jurisdiction."). That is particularly true here because there was not a contractual relationship between the parties that required

9

Worldwise to fulfill ongoing commitments. Worldwise had no obligation to perform any duties in Oklahoma, and nothing has been provided to the Court that indicates either party anticipated Worldwise being involved with SLE post New Gen contracting with SLE via the purchase order contracts.

Although SLE makes statements such as "[d]efendants methodically planned to work with SLE, an Oklahoma citizen, and actively pursued the relationship," *see* Response at 9, these types of generic, conclusory allegations are not sufficient for establishing minimum contacts with the forum state because they do not detail which defendant was involved to what degree. Such statements also do not detail how they planned to pursue the relationship or what exactly was communicated to SLE. "Moreover, the transactions implicated Oklahoma in only an attenuated fashion, as [Worldwise] serves as a broker in transactions between" SLE and New Gen. *Dental Dynamics*, 946 F.3d at 1230. Without providing more specific, non-conclusory allegations relating to the nature of Worldwise's involvement, SLE cannot show that Worldwise has purposefully established minimum contacts in the forum state of Oklahoma.

However, even if Worldwise had established minimum contacts in Oklahoma, exercising personal jurisdiction over it would violate due process because it would not comport with traditional notions of fair play and substantial justice. For this inquiry, the factors that must be weighed are:

> (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most

10

efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies.

*TH Agric. & Nutrition, LLC v. Ace Eur. Grp. Ltd.*, 488 F.3d 1282, 1292 (10th Cir. 2007).

The first "factor is of special significance, because it serves to prevent the filing of vexatious claims in a distant forum where the burden of appearing is onerous." *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1096 (10th Cir. 1998). Here, Worldwise maintains no offices in Oklahoma, employs no one in Oklahoma, and has never even been to Oklahoma. The Court finds that this factor weighs strongly in Worldwise's favor.

On the second factor, "[s]tates have an important interest in providing a forum in which their residents can seek redress for injuries caused by out-of-state actors." *Pro Axess, Inc. v. Orlux Distrib., Inc.*, 428 F.3d 1270, 1280 (10th Cir. 2005) (quoting *OMI Holdings*, 149 F.3d at 1096). "'The state's interest is also implicated where resolution of the dispute requires a general application of the forum state's laws.'" *Id.* (quoting *OMI Holdings*, 149 F.3d at 1096). This factor weighs ever so slightly in favor of SLE but is lessened by the fact that Worldwise is not a part of any contract with SLE that would be governed by Oklahoma law.

The third factor "may weigh heavily in cases where a Plaintiff's chances of recovery will be greatly diminished by forcing him to litigate in [] another forum because of that forum's laws or because the burden may be so overwhelming as to practically foreclose pursuit of the lawsuit." *OMI Holdings*, 149 F.3d at 1097. Although SLE states it has an Oklahoma witness (presumably Keathly), it does not provide the Court with any

11

information explaining why its chances of recovery would be greatly diminished if it had to litigate elsewhere. Accordingly, this factor is at most neutral.

For the fourth factor, courts "look at the 'location of the witnesses, where the wrong underlying the lawsuit occurred, what forum's substantive law governs the case, and whether jurisdiction is necessary to prevent piecemeal litigation.'" *AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1062 (10th Cir. 2008) (quoting *OMI Holdings*, 149 F.3d at 1097). The witnesses (of which the Court is aware) reside in Oklahoma, Washington, New Jersey, Connecticut, and Illinois. The underlying wrong allegedly took place in Amsterdam when Defendants delivered the Gucci products without providing an acceptable invoice trail. Oklahoma law would not govern the contract dispute. And lastly, the interests of the parties will be best served if the litigation is conducted where the Court has personal jurisdiction over *all* the parties. As evidenced by this Order, that is not here. So, this factor weighs in favor of Worldwise.

The fifth factor has no impact on the strength of either party's showing of reasonableness because there are no substantive social policies at play. Given the parties' briefing, this factor is neutral.

Because these factors when considered together weigh in favor of Worldwise, the Court determines that exercising personal jurisdiction over Worldwise would offend traditional notions of fair play and substantial justice even if Worldwise had minimum contacts in Oklahoma.

### C. The Court does not have personal jurisdiction over New Gen.

"[P]rior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing . . . must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum." *Far W. Cap., Inc. v. Towne*, 46 F.3d 1071, 1075 (10th Cir. 1995) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 (1985)). When evaluating interactions that have taken place via the internet, courts consider whether the defendant has "(1) direct[ed] electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts." *Shrader v. Biddinger*, 633 F.3d 1235, 1240 (10th Cir. 2011) (citation and emphasis omitted).

Here, New Gen, through its members, was in frequent communication with SLE by email and text for several months. It clearly intended to engage in business with SLE, and its actions created a potential cause of action. New Gen also mailed products to SLE in Oklahoma for inspection. Lastly, New Gen entered into two contracts with an LLC it knew was an Oklahoma company. Although these contacts are not as strong as other cases, they do show that New Gen voluntarily and knowingly entered into a business relationship with an Oklahoma company. Thus, New Gen established minimum contacts with Oklahoma through its frequent communication with SLE, the two contracts it entered into with SLE, and by shipping products to SLE in Oklahoma—particularly considering SLE is only required to make a prima facie showing.

Next, the Court must determine whether exercising personal jurisdiction over New Gen would offend the traditional notions of fair play and substantial justice. "This determination requires a case-specific inquiry into the reasonableness of the exercise of personal jurisdiction over a defendant who has minimum contacts with the forum state." *TH Agric. & Nutrition, LLC v. Ace Eur. Grp. Ltd.*, 488 F.3d 1282, 1292 (10th Cir. 2007). The "inquiry evokes a sliding scale: the weaker the plaintiff's showing on [minimum contacts], the less a defendant need show in terms of unreasonableness to defeat jurisdiction. The reverse is equally true: an especially strong showing of reasonableness may serve to fortify a borderline showing of [minimum contacts]." *AST Sports*, 514 F.3d at 1061 (citation omitted).

First, the burden of mounting an out of state defense weighs in favor of New Gen. "Defending an action in Oklahoma despite having no business dealings, property, or offices there is burdensome." *Dental Dynamics, LLC v. Jolly Dental Grp., LLC*, 946 F.3d 1223, 1232 (10th Cir. 2020). Additionally, none of the Defendants has ever lived in Oklahoma or even been to Oklahoma.

Second, although "Oklahoma undoubtedly has an interest in providing residents with a convenient forum for redressing grievances," that interest is mitigated if the forum state's law would not apply. *Id.* "A contract is to be interpreted according to the law and usage of the place where it is to be performed, or, if it does not indicate a place of performance, according to the law and usage of the place where it is made." Okla. Stat. tit. 15 § 162. Here, the two purchase order contracts specify that the goods are to be delivered to Amsterdam. Then the products were to be shipped to SLE's buyers in the

14

state of Washington and South Korea. The Court does not need to definitively decide the issue of whether the law of Amsterdam, Washington, or South Korea would apply, only whether the law of Oklahoma applies. And here, given Okla. Stat. tit. 15 § 162 and the text of the two purchase orders, the Court determines that it would not.

Third, there should be facts showing that litigating in a separate forum "would practically *foreclose* pursuit of the lawsuit." *Dental Dynamics*, 946 F.3d at 1233 (emphasis added). But SLE does not argue that any of the other possible forums do not recognize claims for breach of contract or that it does not have sufficient resources to pursue litigation elsewhere.

For the fourth factor, SLE briefly addresses its interest in receiving convenient and effective relief by stating that litigating elsewhere would be "burdensome" and its witnesses are located in Oklahoma and the state of Washington. SLE has provided no other argument regarding why or how litigating elsewhere would be burdensome (i.e., financially, logistically, etc.). At this point, it appears that Oklahoma would not be the most efficient place to resolve the controversy. Besides Keathly, all other parties and witnesses reside outside of Oklahoma. Defendants point out that "New Gen and Dragona are both located in Westwood, New Jersey, less than a 40-mile drive from Matrullo and Worldwise in Stamford, Connecticut." Reply at 10. So, this factor also weighs in favor of New Gen.

"The final factor is neutral as neither party advances any fundamental social policies weighing in their favor." *Dental Dynamics*, 946 F.3d at 1233.

In sum, the five factors, when considered together, weigh in favor of New Gen—particularly when considered in light of the weaker showing of its minimum contacts in Oklahoma. *See, e.g.*, *Benton v. Cameco Corp.*, 375 F.3d 1070, 1080 (10th Cir. 2004) (determining that, even though the parties had a contractual relationship, traditional notions of fair play and substantial justice would be offended by exercising personal jurisdiction over the defendant); *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1098 (10th Cir. 1998) (holding that, even though the defendant's actions established minimum contacts with the forum state, exercising personal jurisdiction over the defendant would violate due process); *Aaron Ferer & Sons Co. v. Atlas Scrap Iron & Metal Co.*, 558 F.2d 450, 454 (8th Cir. 1977) (ruling that exercising personal jurisdiction would violate due process since "the contracts at issue [] were not to be performed in any part in Nebraska," "the goods involved in the contracts did not originate in nor were they destined for Nebraska," "the contracts were not negotiated in Nebraska," and "appellees employed no salesmen or agents in Nebraska"). The Court concludes that, although New Gen has minimum contacts within the forum state of Oklahoma, the exercise of personal jurisdiction over New Gen would be inappropriate because it would offend traditional notions of fair play and substantial justice.

## IV.    CONCLUSION

For these reasons, the Court concludes that SLE has failed to adequately show that the Court has personal jurisdiction over the Defendants. Consequently, the Court GRANTS Defendants' Motion to Dismiss [Doc. No. 12] and DISMISSES Plaintiff's amended complaint [Doc. No. 10]. The dismissal of the amended complaint is without

prejudice. *See Hollander v. Sandoz Pharm. Corp.*, 289 F.3d 1193, 1216–17 (10th Cir. 2002) (concluding that a dismissal for lack of personal jurisdiction is without prejudice to refiling in an appropriate forum).

IT IS SO ORDERED this 18th day of December 2023.

JODI W. DISHMAN
UNITED STATES DISTRICT JUDGE